IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JAMOND JACKSON,** | * |
| **Plaintiff,** | * |
| v. | *    Civil Action No. MJM-22-2444 |
| **MARYLAND DEPARTMENT OF PUBLIC SAFETY & CORRECTIONAL SERVICES,** | * |
| | * |
| **Defendant.** | |
| * * * * * * * | |

## MEMORANDUM

Plaintiff Jamond Jackson filed two complaints that were consolidated into this single action. ECF No. 4. The Court provided Jackson an opportunity to file a supplement to the consolidated action, and then determined on a provisional basis that Jackson's claims would proceed solely against defendant Maryland Department of Public Safety and Correctional Services ("DPSCS" or "Defendant"). ECF Nos. 4, 15.

DPSCS moves to dismiss the complaint or, alternatively, for summary judgment in its favor. ECF No. 22. Jackson was advised of his opportunity to respond to the dispositive motion and did so. ECF Nos. 24, 26. DPSCS did not file a reply. No hearing is necessary to determine the matters pending. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, DPSCS's motion will be granted in part and denied in part.

### I.    BACKGROUND

By Order entered on May 12, 2023, the Court determined that this matter would provisionally proceed against DPSCS on the following grounds: equal protection challenge to the

disparate treatment Jackson received in the mental health unit of Patuxent Institution ("Patuxent") as compared to inmates in the general population (injunctive relief only); and disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Rehabilitation Act ("RA"), 29 U.S.C. §§ 701 *et seq.* ECF No. 15.

In support of his claims, Jackson asserts that he was housed in a mental health unit at Patuxent "against [his] will." ECF No. 1 at 2. He was housed in a mental health unit for 15 years but does not have a psychiatric need that justifies this placement. *Id.* at 4–7. While housed in the mental health unit Jackson was unable to be assigned to prison programs and job assignments that allow him to work and earn wages and are "equal" to those available to persons in general population. *Id.* at 2. He also states that individuals housed in the mental health unit are not eligible to participate in "school" programs. ECF No. 10 at 3. On July 1, 2022, Jackson sent letters to the Warden and Director of Patuxent and the Case Management Department requesting transfer to general population at Patuxent and/or eligibility for nine specific job assignments: landscaping; assistant plumber; dog program; painting; gym/yard hazmat worker; third-shift tier/hazmat sanitation worker to be paid $93.00 to $130.00 per month; kitchen worker; observation therapist; and office work stocking inventory. ECF No. 1 at 3. On July 6, or July 13, 2022, a staff member advised Jackson to advocate for his transfer out of the mental health unit in order to be eligible for particular job programs. ECF No. 1 at 3.

On August 17, 2022, Jackson was advised that he would be discharged from the mental health unit pending "transfer." *Id.* On September 7, 2022, he was advised that, although he was being discharged from the mental health program, he was not accepted into a job or education program at Patuxent and would be transferred to any facility with available bed space in the state.

2

*Id.* at 4. He was also advised that it could take from one week to one year or more for the transfer to take place. *Id.*

According to DPSCS records, Jackson was housed at Patuxent from February 6, 2007, through January 28, 2023, at which time he was transferred to Western Correctional Institution ("WCI").[1] ECF Nos. 22-2 at ¶¶ 3–4; 22-3 at 1; 22-4 at ¶ 2. From October 27, 2017, through May 10, 2020, while housed in the Patuxent mental health unit, Jackson was employed as a sanitation worker. ECF No. 22-2 at ¶ 4. This position ended when Jackson was placed on administrative segregation. *Id.* Jackson was again employed as a sanitation worker while in the mental health unit from March 31, 2021, through June 8, 2021. *Id.* This position ended when Jackson was placed on disciplinary segregation. *Id.* Jackson was employed again as a sanitation worker while in the Patuxent mental health unit from November 9, 2021, through January 28, 2023, the date he was transferred to WCI. *Id.*

Jackson has been housed in a general population unit since he arrived at WCI. ECF No. 22-4 at ¶ 2. At WCI, from February 14, 2023, through March 6, 2023, Jackson was assigned "Job Bank" as his program. ECF No. 22-2 at 3. On March 6, 2023, Jackson was transferred to an education program to earn his General Education Diploma ("GED"). ECF Nos. 22-2 at 3; 22-4 at ¶ 3. Individuals enrolled in this education program are not permitted to hold a job at the same time but earn both "credits" and monetary compensation for participating in the program. ECF No. 22-4 at ¶¶ 3–4. As of December 11, 2023, Jackson remained enrolled in the GED program. *Id.* at ¶ 3.

---

[1] There appears to be an error in both Defendant's memorandum and the declaration of Kristian Donnelly stating that Jackson was transferred to WCI on January 8, 2023. ECF Nos. 22-1 at 2; 22-2 at ¶ 4. The Declaration of Jason Clise and Jackson's Traffic History reflect the transfer occurred on January 28, 2023. ECF Nos. 22-3 at 1; 22-4 at 1.

Jackson, in his response to Defendant's motion, states that he was discriminated against due to his race while housed in the mental health unit at Patuxent. ECF No. 26. He states that he was unable to work in the kitchen or food service, could not attend school to complete his education, could not go to "night gym" or the "yard," could not work in the "shops," or be assigned a hazmat sanitation job. *Id.* at 1. Jackson does not dispute that he received a job assignment in sanitation while at Patuxent. Though he does not make this claim in his initial complaint, in his motion response, he claims that his transfer to WCI was racially motivated and complains about conditions at WCI following his transfer. *Id.* at 2.[2]

## II.   STANDARD OF REVIEW

DPSCS asserts that the complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, that summary judgment should be granted pursuant to Rule 56. ECF No. 22. A motion to dismiss styled in the alternative as a motion for summary judgment implicates the court's discretion under Rule 12(d). *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where the plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the

---

[2] Jackson's WCI-related claims were previously dismissed. *See* ECF No. 15. Further, because Jackson did not assert any claim of race discrimination in his Complaint or Supplement, the Court does not recognize any claim of race discrimination in this action. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *McDonald v. LG Elecs. USA, Inc.*, 219 F. Supp. 3d 533, 541 (D. Md. 2016) (internal quotation marks and citation omitted).

parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Id.* at 261.

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). And though district courts have a duty to construe pleadings by self-represented parties liberally, even a pro se plaintiff must allege facts that state a cause of action. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985) (duty to construe liberally does not require courts to conjure up questions never squarely presented). Liberal construction does not mean that a court can "ignore an obvious failure to allege facts setting forth a plausible claim for relief." *Sheehan v. Saoud*, 650 F. App'x 143, 152 (4th Cir. 2016) (citing *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990)).
5

Rule 56 provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255) (second alteration in original). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

A defendant may also move to dismiss a complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

DPSCS asserts in its motion that there are no material facts in dispute, it is entitled to immunity under the Eleventh Amendment, and Jackson has failed to state a claim for relief. ECF No. 22. The motion attaches exhibits that relate to each of Jackson's pending claims. ECF Nos. 22-2, 22-3, 22-4. In response, Jackson does not argue, nor does it appear to the Court, that he requires discovery to oppose the motion effectively. The motion will be construed as one for summary judgment where appropriate.

### III. DISCUSSION

#### A. Immunity From the Fourteenth Amendment Claim

Jackson asserts an equal protection claim based on the treatment he received in the mental health unit at Patuxent. While housed in the mental health unit Jackson alleges that he was unable to be assigned to prison programs and job assignments that allow him to work and earn wages and are "equal" to those available to persons in general population. ECF No. 1 at 2. He also alleges that individuals housed in the mental health unit are not eligible to participate in "school" programs. ECF No. 10 at 3.

Defendant argues that 42 U.S.C. § 1983 does not abrogate the State's Eleventh Amendment immunity. ECF No. 22-1 at 8. Defendant argues that the Eleventh Amendment bars any suit in federal court, absent consent, by its own citizens. *Id.* at 9. Further, it is well-established that the Eleventh Amendment bars federal court actions against agencies and departments of the state, alongside the state itself. *Id.*

The Eleventh Amendment "limits the Article III jurisdiction of the federal courts to hear cases against States and state officers acting in their official capacities." *Kitchen v. Upshaw*, 286 F.3d 179, 183–84 (4th Cir. 2002); *see also Lawson v. Union Cnty. Clerk of Ct.*, 828 F.3d 239, 250 (4th Cir. 2016) (states and state agencies alike are protected from federal suit by the Eleventh Amendment) (citations omitted). Under the Eleventh Amendment to the U.S. Constitution, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Amison v. George Mason Univ.*, No. 23-1042, 2023 WL 8946774, at *2 (4th Cir. Dec. 28, 2023) (per curiam) (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)). "While the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, *see* Md. Code, Ann., State Gov't, §§

12-101, *et seq.*, it has not waived its immunity under the Eleventh Amendment to suit in federal court." *Dixon v. Baltimore City Police Dep't*, 345 F. Supp. 2d 512, 513 (D. Md. 2003), *aff'd*, 88 F. App'x 610 (4th Cir. 2004).[3]

Here, DPSCS is a department or agency of the State of Maryland. Md. Code Ann., Corr. Servs. § 2-101; *see Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009) ("[T]he Maryland Department of Public Safety and Correctional Services is undoubtedly an arm of the state."); *Dep't of Pub. Safety & Corr. Servs. v. Doe*, 439 Md. 201, 207 n.2 (2014) (stating that DPSCS is "an agency of the State"). Therefore, DPSCS has sovereign immunity under the Eleventh Amendment, and this Court lacks subject matter jurisdiction over the claim. *Pevia v. Hogan*, 443 F. Supp. 3d 612, 631 (D. Md. 2020) ("The Fourth Circuit has recognized that the defense of sovereign immunity is a jurisdictional bar, stating that sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.") (quoting *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018))

---

[3] The Court notes that, under the *Ex parte Young* doctrine, a private individual may bring suit against state officials for prospective injunctive or declaratory relief "designed to remedy ongoing violations of federal law." *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 292 (4th Cir. 2001); *Daryl Bowling v. Department of Public Safety and Correctional Services, et al.*, No. 1:23-CV-01785-JRR, 2024 WL 4056636, at *3 (D. Md. Sept. 5, 2024). "Under the *Ex parte Young* doctrine, 'a federal court has jurisdiction over a suit against a state officer to enjoin official actions that violate federal law, even if the State itself is immune from suit under the Eleventh Amendment.'" *Bowling*, 2024 WL 4056636, at *4 (quoting *Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261, 288 (1997)).

However, this doctrine "only allows suit for injunctive or declaratory relief against individual officers or officials of a state or local government, not against a state or state agencies." *Libertarian Party of Virginia v. Virginia State Bd. of Elections*, No. 1:10-CV-615 LMB/TCB, 2010 WL 3732012, at *5 (E.D. Va. Sept. 16, 2010), *aff'd sub nom. Libertarian Party of Virginia v. Va. State Bd. of Elections*, 434 F. App'x 174 (4th Cir. 2011). Because the remaining claims in the instant suit are solely against DPSCS and not any individual state official, *Ex parte Young* does not apply. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); ("Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its own name regardless of the relief sought. . . . Thus, implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State.") (citations omitted).

(internal quotations omitted), *see Bowling*, 2024 WL 4056636, at *4 (dismissing claim against DPSCS because DPSCS was entitled to sovereign immunity under the Eleventh Amendment and, therefore, the court lacked subject matter jurisdiction).

Accordingly, Jackson's Fourteenth Amendment equal protection claim will be dismissed.

**B. ADA and Rehabilitation Act**

Jackson's ADA and RA claims arise from the same facts as his equal protection claim. He alleges that while housed in the mental health unit, he was unable to be assigned to prison programs and job assignments that allow him to work and earn wages and are "equal" to those available to persons in general population. ECF No. 1 at 2. He also alleges that individuals housed in the mental health unit are not eligible to participate in "school" programs. ECF No. 10 at 3.

Defendant asserts that Jackson fails to state a claim for a violation of the ADA or Section 504 of the Rehabilitation Act because Jackson fails to allege that he was subject to intentional discrimination, disparate treatment, or disparate impact, or that Defendant failed to make a reasonable accommodation. ECF No. 22-1 at 11.

To seek recovery for violation of either the ADA or the RA, a plaintiff "must allege that (1) she has a disability[4], (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability."

---

4   The ADA provides that an individual is "regarded as having" a qualifying impairment "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual *or perceived physical or mental impairment* whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A) (emphasis added). When a plaintiff claims they are "regarded-as" having a disability, "the perception of the employer becomes the relevant inquiry for the court." *Chamberlain v. Securian Fin. Grp., Inc.*, 180 F. Supp. 3d 381, 399 (W.D.N.C. 2016); *see also Young v. United Parcel Serv., Inc.*, 784 F.3d 192, 199 (4th Cir. 2015) ("where an employee relies on a 'regarded as' disabled theory, we focus 'on the reactions and perceptions of the employer's decisionmakers'") (citation omitted).

*Cartagena v. Lovell*, 103 F.4th 171, 184 (4th Cir. 2024) (citing *Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 498 (4th Cir. 2005) (quoting 42 U.S.C. § 12132); *see also* 29 U.S.C. § 794(a).

As stated above, Defendant does not contest the facts presented by Jackson, that individuals in the mental health housing unit were denied access to certain jobs and educational programs, nor does it offer any rationale or justification for the denial of access to these programs.  Defendant's assertion that Jackson's sanitation job at Patuxent disproves discrimination at that facility is insufficient to overcome Jackson's allegation that he was categorically denied access to certain job and education programs because he was housed in a mental health unit.

Defendant next argues that Plaintiff fails to overcome Defendant's Eleventh Amendment immunity to suit under the ADA and RA "because none of the complained-of conduct violated the Fourteenth Amendment."  ECF No. 22-1 at 10.  Where a state has not consented to suit, Eleventh Amendment immunity may only be abrogated by a clear legislative statement (1) indicating Congress's intent to abrogate the immunity and (2) made pursuant to a valid exercise of its power.  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55–56 (1996) (citations omitted).  In *United States v. Georgia*, the U.S. Supreme Court determined that Congress intended to permit disabled inmates to bring claims against states for money damages through Title II of the ADA, so long as the state's conduct was unconstitutional.  546 U.S. 151, 158–59 (2006).  Disabled inmates may also sue for money damages through Section 504 of the Rehabilitation Act.  *See Andrews v. Md. Dep't of Pub. Safety & Corr. Servs.*, Civ. No. JMC-23-00172, 2024 WL 520038, at *8 (D. Md. Feb. 9, 2024) (noting that remedies for Section 504 violations expressly mirror those for Title II violations) (citing 42 U.S.C. § 12133).

Jackson has adequately stated a claim under the ADA and the Rehabilitation Act based on conduct that plausibly violated the Equal Protection Clause of the Fourteenth Amendment.  To state a claim for violation of the Equal Protection Clause in the prison context, a plaintiff must allege that the disparate treatment they received was not reasonably related to any legitimate penological interests.  *Fauconier v. Clarke*, 966 F.3d 265, 277 (4th Cir. 2020).  Here, Jackson adequately alleged disparate treatment. He alleges that when he was housed in the mental health unit, he was unable to be assigned to prison programs and job assignments that allow him to work and earn wages and are "equal" to those available to persons in general population, ECF No. 1 at 2, and that individuals housed in the mental health unit are not eligible to participate in "school" programs, ECF No. 10 at 3.  Defendant does not contest the foregoing facts presented by Jackson, nor does it offer any rationale or justification for the denial of access to these programs.  Therefore, Jackson has plausibly alleged a violation of the Equal Protection Clause and has adequately stated a claim under the ADA and RA based on that violation.[5]

Jackson's Complaint adequately stated a claim for violation of the ADA and RA and Defendants do not present any evidence entitling them to judgment as a matter of law.  For these reasons, Defendants motion to dismiss, or in the alternative, for summary judgment will be denied as to the ADA and RA claim.

### C. Injunctive Relief

---

[5] Even though Jackson's Fourteenth Amendment claim will be dismissed, as explained *supra*, that dismissal is based solely on Defendant's sovereign immunity—not based on any failure by Jackson to plead a plausible equal protection violation. Jackson's ADA claim is not subject to dismissal because Congress has abrogated sovereign immunity for ADA violations that also violate the Fourteenth Amendment. *See United States v. Georgia*, 546 U.S. 151, 159 (2006) ("insofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity").

DPSCS asserts that Jackson's request for injunctive relief on his Fourteenth Amendment claim is moot and argues that he is not entitled to a preliminary injunction. ECF No. 22-1 at 6–8. The Court notes that, contrary to DPSCS's assertion, Jackson has not requested a preliminary injunction. The Court declines to rule on Jackson's request for injunctive relief at this juncture, while his ADA claim is still pending.

## IV. CONCLUSION

For the foregoing reasons, DPSCS's motion is granted in part and denied in part. Jackson's Equal Protection claim against DPSCS must be dismissed without prejudice for lack of subject matter jurisdiction. However, Jackson's disability discrimination claim in violation of the ADA and the Rehabilitation Act may proceed.

A separate Order follows.

_9/25/24____  
Date

_____/S/_____  
Matthew J. Maddox  
United States District Judge